You may proceed, Counsel. Please, this is the Court. My name is Robert Franz. I represent the Appellate Defendant, Chief of Police Wynne Larner, who was the Chief of Police for Baker City. This case is a First Amendment retaliation case, and the issue before the Court is whether there is an issue of material fact as to the adverse action taken. Well, to be clear, I'm not sure that is the issue. You're appealing because there was a denial of summary judgment, correct? Correct. So we have very limited jurisdiction here. Our jurisdiction is to see if we take the facts as the plaintiffs would like us to take the facts. Should qualified immunity have been granted? Isn't that what we're doing here today? No, it would be, they would have to have, there's factual issues. The facts, undisputed facts, is that entitled, Chief Wynne Larner, to qualified immunity? Right, but in making that analysis, don't we take the facts as the plaintiffs would like us to have them? Because otherwise, I don't see how we have jurisdiction to take this appeal. This is, again, this is a denial of summary judgment, correct? Right. It's not a denial of motion to dismiss. Denial of motion to dismiss, you take the facts as pled. Okay. I'm sorry. Proceed. Okay. So our position is that the undisputed facts show entitlement to qualified immunity, and the issue is whether there is adverse reaction to, they're saying a 2008 article that was written by Mr. Addison. The little twist to the case is that some of the adverse action contended with speech. So we have this interplay between the First Amendment speech right of the Chief that goes, that takes into account any adverse reaction of the First Amendment. So basically, we have two situations with the speech. We know what the standard is set forth. It was set forth in Milligan. And we know what the standard where public officials' alleged retaliation is in the nature of speech in the absence of a threat, coercion, or intimidation, intimidating that punishment, sanctions, or adverse regulatory action will immediately follow. The regular rules of defamation do not apply. And even if those, the speech does not imply punishment or sanctions or adverse reaction or taking away a Federal benefit or a State benefit, even if the statements are false, that is not enough to constitute retaliation. And the cases refer to it as a high bar. They always say there's a high bar when you have speech being contended as the retaliation. I think a case that's interesting to look at is Valleje v. Hill. And that's cited in our brief. It was a 2017 case. It is a district court case. But what makes that case interesting is it was an investigative reporter who was in a conflict with Mr. Hill, who was a supervisor for the city of San Luis Obispo. And if you take a look at what Hill did in that case, you know, he basically made threats against her, said she was mentally ill. And he did, he went on this campaign against her. And they contended retaliation for things that she said about him. He threatened the people that she went on talk shows. And he even went to her advertisers. She was a new, she had a media corporation. So Hill even went to advertisers and told her that, you know, you're not to, you're not to use this person. And the court in that case, you know, so outside from what the opinion, Plaintiff's third theory is that defendant retaliated against her by pressuring several of her advertisers to stop business with her and attempt to destroy her financially. Plaintiff does not allege that defendant threatened to use any punishment, sanctions, or adverse regulatory action. And the court found that they didn't reach the high bar there that's necessary. So we think the standard's easy. There were two conversations. Chief Lerner had a conversation with Margaret Lynn of New Directions. That was a current employer of Addison. Chief Lerner and Margaret Lynn had been on many boards together. He had a conversation with her about background checks. He told her that he didn't get information on anybody from public records at the Sheriff's Department. He said that there had been an incident with a prior employer and Mr. Addison that did not go well. And he said Mr. Addison had mood swings. It's our position that none of that raises to the level of the high bar necessary. The second conversation, actually it was the first conversation, was with Kerry McQuiston. Kerry McQuiston was the current employer at the time of the comments of Mr. Addison. Now what had happened back in 2008, and you can see it in the incident report from the fact file, Mr. Addison had been terminated by the record courier and he lost it. He called him names. He threw and broke a camera against the wall in several incidences. And at that time Kerry McQuiston was also an employee of record courier. So now fast forward to 2014, one of the police officers stops Mr. Addison and Mr. Addison goes off. And so Chief Lerner was relaying to Kerry McQuiston what had happened at the traffic stop. She at that time explained to the chief that she would watch Mr. Addison cycle through emotionally. After she received the information from Chief Lerner, she continued to hire Mr. Addison. Mr. Addison then quit her employment and went to work for New Directions. After New Directions fired him, he went back to work for Kerry McQuiston. So our position is that this speech does not reach the high level. The second two ones are more of a physical accusation of adverse reaction. So the plaintiff is contending, the plaintiff was, the article is 2008. The plaintiff was stopped twice in 2010. I think three or four times in 2013 and one time in 2014, traffic stops. They contend that the traffic stops were part of the retaliation for the 2008 newspaper article. Only one of the traffic stops took place within the statute of limitation. That was a traffic stop by Dustin Newman, the same traffic stop that Chief Lerner explained to Kerry McQuiston. And we have declarations from both the chief. I never instructed anybody to stop the plaintiff. I never instructed Dustin to stop the plaintiff. Dustin did an affidavit. No one told me to stop Mr. Addison. So our position is that it's undisputed that Chief Lerner never instructed anybody to do a traffic stop of the plaintiff. The third one is the so-called fact file. There's Baker County dispatcher records, and this is the Baker County Sheriff's Department, keeps records of stops, of traffic infractions, of incidents that happen, and record in this fact file dispatch memos and stuff from the officers as they're in the field. So the plaintiff said we retaliated against him by providing the fact file to the plaintiff, I mean to New Directions. We did not provide the fact file to New Directions. If you look in the heading of the fact file, it's by the Baker County Sheriff's Department. They run the dispatch. Now, counsel, let me just jump in again to get back to the question I asked at the beginning because as I understand it, this was, you're appealing the denial of summary judgment, correct? Correct. Which means we have a very limited role in this case. It's to take the facts, I guess we can say as the district court found them, and determine whether qualified immunity should have been granted. And I disagree. You think we can do more than that? If the facts are undisputed, let me just use an example in this case, okay? So we have the fact file that Judge Simon said may be delivered by the Bakers. We can't get into whether Judge Simon was correct to find certain facts or not. We have to take the facts as he found them. I'm not saying down the road you may not have other issues, but for us to have jurisdiction in this case, and there's a case I think it's called Johnson v. Jones Supreme Court case, that says we only have jurisdiction in denial of summary judgment to review whether or not qualified immunity should have been granted. That's it. Can we do more than that? You look at the undisputed facts. Right. For example. The facts that the district court took them. No, the facts that are undisputed. Okay. If the judge makes an error, if the judge, if everybody. No, no, no, no, we can't, that we can't do. No, but if the judge misinterprets the facts. No, we can't, counsel, I'm telling you that for us to have, once you're doing that, we don't have jurisdiction. I disagree. Okay, so what case says we can get into determining whether the judge made factual errors? Well, I think if you look at any of the cases where they look at what the undisputed facts are. I don't know of any qualified immunity case that has not looked at what the facts are. I've had, I don't know how many qualified immunity cases I've had in front of this circuit. Three, four, five, and we've always taken undisputed facts, and if the fact is undisputed, that is the one you evaluate. Okay, so what are the undisputed facts in this case? Where do we look to the record to say, okay, here are the undisputed facts on page X, and we determine from that, those facts, whether qualified immunity should have been granted? Okay, so let me just take the one where the judge said that the police department may have given new directions to the fact file, okay? It's undisputed that Chief Lerner was not even at work that day. Okay, but again, what you're asking us to do is you're asking us to say that Judge Simon got the facts wrong, correct? I'm asking you to take the undisputed facts. No, but you're asking us to dispute what Judge Simon did. His conclusion as to the fact, okay. We can't do that. We can't do that at this stage. Show me the case that says we can do, for us to have jurisdiction. Normally, look, you would agree that normally we do not have jurisdiction to review the denial of summary judgment, correct? Correct. And the only reason why we're even here today is because you are asserting qualified immunity, correct? Correct. Okay. So where is the case that says when we're in this posture, we can say, yeah, I know Judge Simon said this fact was undisputed. He's wrong. And actually, it's this fact over here. What's the case that says we can do that? Nothing. It's still an appeal from a motion of summary judgment. Forget the qualified immunity. Let's just say we were up on summary judgment. Well, then we're done. Then we're out of the court. Okay. I think you've got to have qualified immunity for it to be here. I disagree. I think you take the undisputed facts. And I think if you take a look at any qualified immunity case, and you can even take a look at the qualified immunity case, State v. Harris, Supreme Court of the United States, on whether there's qualified immunity for a high-speed pursuit case, the Supreme Court said you cannot take an affidavit from a person that contradicts a video. There is that one. I will grant you there is that one case where the Supreme Court did it. So where is the high-speed cam video in this case that we can do that with? The fact file says it came from the Baker County Sheriff's Department. Okay. That's where you're going back. Okay. All right. So other than that one case. Well, I reserve it. I would suggest you every single case, if you start taking a look at the cases, they're going to first affirm what the facts are. Okay. I've never had that issue raised. That's a very interesting question. I've always argued it. We take a look at the disputed facts. That part doesn't change the qualified immunity. Okay. Thank you. So we'll reserve the rest of your time. Thank you. You know where I'm going to start, so. I do, Your Honor. So the, first of all, I'm Cliff Davidson. I represent Brian Addison along with Kristen Hilton, who also represents Mr. Addison. So the standard of review here is circumscribed. If you look at George v. Morris, which is 724 F 3rd 1191, which is a 2013 case from this circuit. And that case furthermore states that any decision by the district court that the party's evidence presents genuine issues of material fact is categorically unreviewable on interlocutory appeal. So I think that answers the question. And you're referring to page four of your brief. Correct. Okay. So let's, let's assume that I agree with you that that's what we should be doing here. Yes. Kind of walk us through why qualified immunity should not be granted in this situation. If we take the facts as Judge Simon took them. Certainly. So to address what I think my colleague was referring to about sort of the speech versus speech issue, which is what this court confronted in Mulligan versus Nichols. I think a good way to illustrate it would be to explain how that could have played out in this case, but did not. So as we discuss in the supplemental excerpts of record, Chief Loner, who by the way, is no longer the police chief, but Chief Loner had a column in the same paper where Mr. Addison wrote his editorial that was critical of the police. And I asked Chief Loner at his deposition, did you write any kind of response to Mr. Addison's column? And he said, no. And I said, is there any reason you couldn't have? And he said, not that I know of, I'm paraphrasing slightly. If what had happened in this case was that Chief Loner had responded to the editorial at that time by writing a column of his own attacking Mr. Addison and saying, he got this wrong. His analysis is wrong. His integrity as a journalist is fallible. Any of those things. And he had written that in response to a public conversation about the police force. And the Baker City Herald decided, you know what? Chief Loner's right. Maybe we should terminate him. That would look like Mulligan versus Nichols. The situation here was a six-year-long campaign of harassment and retaliation that culminated in our client being fired from two jobs. There was no public conversation, and I'll get to what Mulligan versus Nichols says about that in a moment. But there was no public conversation concerning Mr. Addison that the Chief Loner was participating in. Rather, what happened was a private conversation, or actually it began with an email that Chief Loner sent to New Directions, Mr. Addison's employer, asking, hey, who does your background checks? I see you have this new hire. And he admitted in his deposition that the new hire was Mr. Addison. And New Directions writes back and says, oh, we do the typical DHS background checks. Why? Is there a problem? Is there something we should know? And he said, give me a call, dot, dot, dot. And then they spoke twice, and then our client was fired. And then our client was fired again by Ms. McQuiston's newspaper. That is different from a situation in which there is a public accusation against the Los Angeles Police Department in connection with an arrest, which was the where the police exercised their own First Amendment rights to speak out in their own defense against an ongoing controversy about their arrest of a fairly high-profile individual who worked for a bank and also worked for a movie studio. And this Court, under those circumstances, now, this goes to the high bar point that my colleague has referred to. The Court said, retaliation claims involving government speech warrant a cautious approach by courts. Restricting the ability of government decision-makers to engage in speech risks interfering with their ability to effectively perform their duties. It also ignores the compelling, the competing First Amendment rights of the officials themselves. The First Amendment is intended to, quote, preserve an uninhibited marketplace of ultimately prevail, end quote. That marketplace of ideas is undermined if public officials are prevented from responding to speech of citizens with speech of their own. That was this Court's rationale for the high bar in that case. But the Court went on to say that there's no categorical approach to what is going to be adverse action on behalf, on the part of the government. And the other cases that Chief Loehner cites concerning public statements or statements about plaintiffs who ultimately sue for Section 1983 violations concern general statements released to the public at large. So for example, the Supreme Court case that they cite on this point concerned the Posting of essentially, you know, known shoplifters in a number of stores around the town. And there were two reasons why the Supreme Court said that that is not First Amendment retaliation. The first is that was a general statement to the public. It wasn't targeted at anyone in particular. So for example, it was not targeted to that plaintiff's employer, contrary to the situation that we have in our case. And second, the plaintiff couldn't demonstrate that he'd actually suffered any harm from this. All there was was an awkward conversation with his employer. He wasn't terminated. There was no particular adverse situation that he could point to. Now, the strange thing about the adverse action component and the discussion of it in the public employment context, which is where that term adverse action came from. But as in the Fritz case that we cited from the Sixth Circuit, which was decided in 2010, which in turn cited to a Judge Posner opinion from the Seventh Circuit, he said, well, what we're really getting at is whether the action that's retaliatory would chill a person of ordinary firmness. So while adverse action might make sense in the context of employment, it might not make sense, for example, in the context of school-related speech, which this Court addressed in O'Brien v. Welty, which was the same year as Mulligan v. Nichols. And the Court in that case formulated the test not so much as actually not even it's not so much, but the but the Court actually said it's not adverse action. It's actions that would chill a person of ordinary firmness. So the test that applies in our case, and I have no explanation, I haven't found any, for why in the same year this Court characterized the test in two different ways. But what I would offer is that the reason is Mulligan v. Nichols involved police officers and the adverse action test seems to have been Mulligan v. Welty, which was decided a few months before, involved a school district, which and that case in turn cited to other school-related cases. So it may be that the Court should adopt a flexible approach to what is adverse in certain situations, which is actually what the Sixth Circuit held in Thaddeus X. Would the Court like me to address the clearly established problem? It seems to me that for those cases, you would point us to cases like Duran and Ward. Correct. Correct. That it had been clearly established that the police cannot retaliate. And furthermore, to the extent that I know that the issue of the clearly established prong has been an issue that's arisen frequently lately. And I'd point out two recent cases. The first, Casella v. Hughes, from this year, the Supreme Court noted at page 1152 that specificity is especially important in the Fourth Amendment context, where we're talking about split-second decisions that can involve officer safety, whether to arrest, those kinds of situations. Here, we do not have a situation like that. We have a public official who, in our view, has undertaken a six-year project of harassment and retaliation. And then also, Hope v. Peltzer, which I guess is not as recent, but in 2002, the Supreme Court said that officials can still be on notice that their conduct violates established law, even in novel factual circumstances. Unless there are any further questions. Oops. Judge Wardlaw, it sounds like you're muted or something. Oh, yes, I was. Sorry. Hopefully, we didn't miss anything else. Were there any other questions that you asked? Because I didn't hear. I have a question. I have a question. Is there anything in the local law in Baker City that would say, like, the police ethical code of conduct or regulations that apply to performance of the police chief and officer's job in Baker City, that would say to the police chief, you don't leave a red flag in a file after the conduct has dissipated, or you don't, on your own, call up an employer? Is there anything that governs any of these sorts of behaviors that occurred in this case? Almost like a code of conduct. Right. I'm considering it. There's no, but there was a document considered below about which there's an issue of fact, but the city manager disputed that a particular document was kind of chief loaner's job description. That's the closest we came in this case. Okay. Well, there was, I had a case many years ago. It was Doe versus the city of San Diego police, and there was actually, the police department had a manual code of conduct. One of the things they said is you can't wear your officer uniform in certain contexts, and this person wore his officer, and it was a First Amendment retaliation case. But there was a very detailed code, and that's the reason I was asking the question. This is a small city of 9,500 people. It does not have the same level of detail in their procedures.  Thank you. Thank you, Your Honors. Thank you. Two points. There is a job description for the chief of police. It's very detailed, two pages long. It tells him he's a community partner. He's to work with businessmen. He's to keep them advised of everything. That's a part of the record, and that's why this was within the scope and course of employment, and that's why Judge Simon found that these, everything he did was within the scope and course of his employment and under federal or state law because he was complying with his job description. Now I'm going to accept Judge Owen's conditions. Let's take a look at what the Judge Simons found. He said that he made mood changes. He said that there would be something happened with a prior employer that did not go well. That does not rise to the high bar. Now, remember, Paul v. Davis has held a defamation case does not lie under Section 1983, even if it's false. So he, the judge, ignored the high bar and went back down to straight defamation law. That's why barred by Paul v. Davis. So my position is if the high bar wasn't made, let's go back to the low bar. Under Paul v. Davis, low bar. I'm entirely qualified immunity. And if not, there clearly is a dispute. And take a look at that case with San Luis Obispo. And thank you very much. Thank you, counsel. All right. This matter's been submitted, and this particular panel is adjourned. We'll be back in court tomorrow at 930.
judges: Wardlaw, Owens, Marquez